Good morning, have a seat please. Could we call the case please, Cheryl? 14-1456-Equals v. Anthony Scott Would counsel presenting argument please step forward, introduce yourselves for the record, and spell your name? Good morning, your honors. My name is Whitney Price with the Office of the State Appellate Defender, and I represent Anthony Scott. Good morning. Good morning, your honors. Assistant State's Attorney Joseph Alexander on behalf of the people of the State of Illinois. I will be arguing the issues raised in the original brief, if this Court chooses to hear them. Good morning, your honor. Assistant State's Attorney Alan Spellberg. I'll be presenting argument in relation to the supplemental briefing. Are there retroactivity questions? All right. As Mr. Spellberg knows from the last argument, we try to shoot for 15 minutes a side, but we can be liberal with that. In terms of the State, you're certainly free to do what you wish, but I think we would probably say from this side that the retroactivity questions are a little more prominent in this case to us. So Mr. Spellberg, maybe you'll want to go first, but in terms of Ms. Price, would you like to reserve some time for rebuttal? You can have whatever time you need. All right. Thank you, counsels. And Ms. Price, whenever you are ready. Good morning, your honors. May it please the Court. As this Court is aware, I have raised a number of issues in my briefs in this case. I intend to focus on one issue this morning, Issue 6, the retroactivity of the amendments to the Juvenile Automatic Transfer Law. But I would welcome this Court's guidance on whatever it would like to address. That sounds good. Anthony was only 16 years old when he was tried in adult court. At the time of the offense, armed robbery with a firearm was excluded from juvenile court jurisdiction. But as of January 1, 2016, the Illinois legislature has amended the Juvenile Court Act and determined that juveniles like Anthony should not have their cases automatically transferred to adult court. Ms. Price, are you asking for the aggravated robbery and the unlawful restraint, are you asking for that to go back to juvenile court for sentencing on those crimes alone? Or are you asking for a whole new delinquency hearing on that? We're actually asking for a discretionary transfer hearing. So we're asking for remand to the juvenile court where they will consider the factors. Consider the factors that are in place to determine whether Anthony should be transferred to adult court. I don't think we need to address this morning the issue of what sentencing law would apply. That can be definitely fleshed out by the parties on remand. But I'd be happy to discuss that if you would like to discuss that a little bit more. You're talking about vacating everything that happened below that. You're talking about a dual. Except the not guilty. We're keeping that one. Keeping the not guilty. I'm sorry. What we're actually talking about is remanding for the transfer hearing. And if the juvenile court finds that transfer is inappropriate, then Anthony's conviction and sentence should be vacated. And he should be re-sentenced for an adjudication of delinquency. That's specifically what we're asking for. So if you go back and they say transfer again, are you asking for a whole new trial now? No, the sentence would remain in place. Okay. On this specific issue. On the other issues, of course. On the discretionary transfer hearing, they have to consider a myriad of factors, right? Yes. And Nick Ford had to also address the same myriad of factors in his sentencing, correct? That's actually incorrect, Your Honor. Tell me about it. So what occurred here was that the state petition for adult sentencing here under Section 5-130, the factors that you consider, there are six factors specifically under 5-130, are separate and distinct and different from the factors under Section 5-805. So there are actually 16 different factors that the court should consider or would consider in a discretionary transfer hearing. And I can walk through some of those differences, but in particular, a few of those differences, excuse me, a few of those differences, I'll just write here, write them down for you, are that the court should consider any previous delinquent or criminal history of the minor, any previous abuse or neglect, any mental health, physical, or educational history, also whether the minor is charged through accountability, the minor's history of juvenile services, which is very distinct and separate, and also whether there is a reasonable likelihood that the minor can be rehabilitated and the adequacy of the punishment or services under the juvenile laws. So in this case, although there was a petition for adult sentencing and Judge Ford did consider certain factors, there are not the same specific or developed factors that are available under a discretionary transfer hearing. Great. Thank you. Your Honors, two recent published opinions by this court have found the new law retroactive. Anthony, who has no other adult felony convictions, urges this court to adopt the analysis in Patterson and Ortiz and remand his case, as I discussed, for a discretionary transfer hearing. How many are saying it's not retroactive? We had an even amount? Essentially, it's 2-1 right now. I believe Hunter is the other opinion that came out recently in, I believe, it was June. And then, as you well know, or as you probably know, Patterson, the court in Patterson denied a petition for rehearing and then issued a modified opinion earlier this week. So it's Hunter, Patterson, and Ortiz? Hunter, Patterson, and Ortiz, correct. And we're asking this court to follow, obviously, Ortiz and Patterson. I hate to make you go back, but I'd like to talk about this petition hearing that did take place. When I look at the statutes, the discretionary transfer hearing statute and the statute governing what happens when the automatic transfer charges an acquittal and then you have to decide whether to stay in adult court or not for the adult sentencing, they seem to be largely the same topics. They both deal with the age of the minor, the history of the minor, the details of the crime charged, although in the latter cases you've already established that through proof, whether the security of the public requires sentencing as an adult, whether there are facilities particularly appropriate. I grant you that the discretionary transfer hearing language is a little bit more detailed. It's got some more subsections. But was there anything preventing the defense in the petition hearing that did take place from bringing in all of the same stuff that it would bring in if there was an automatic discretionary transfer hearing? There's nothing in the law that was preventing the defense counsel from presenting some of these factors. It's the same word.  The discretionary transfer hearing was very different from what is specified in the discretionary transfer law. In addition, there's a different standard in evidentiary rules. Specifically in section 5-805, the standard was probable cause. Also, they have specified that the rules of evidence apply at the juvenile sentencing hearing. Those specifications are not at all included in the petition for adult sentencing. Well, because you're not doing a trial. When you do a discretionary transfer hearing, you just need probable cause and an offense was committed. So here we have the benefit that Judge Ford had the entire trial before him and a determination of guilt or innocence, correct? He did. So wouldn't that be Judge Ford was privy to more knowledge of this case than at a discretionary transfer hearing the judge would be? I'm not sure that we can make that assumption. What counsel had to go on at this point was what was available in the petition for adult sentencing in that section of the statute. What we have now is a very specific list of factors that counsel can draw upon when arguing for discretionary transfer and focus on whether Anthony should be transferred. At that time, counsel was focused on whether he should be sentenced as an adult here, whether he's going to benefit from the juvenile services that are available to him, or whether he has benefited before. But doesn't he go to juvenile DOC until he's 21? Yes, he would. So wouldn't he benefit from the same juvenile services that he would get if he were tried and sentenced in juvenile court? I'm sorry, I'm not sure I understand your question. So a juvenile offender is convicted in adult court. He still goes to juvenile DOC until the age of 21, correct? Correct. So all of the services and everything that you're claiming he couldn't have gotten, he's getting, whether he's sentenced as a juvenile or an adult, correct? I believe that's correct, Your Honor. Okay. So really what you're saying is that they should have had the discretionary hearing and if everything breaks your way, he stays in juvenile court and he gets juvenile court services, which he's getting anyway, even when he's sentenced as an adult. The difference here, Your Honor, is that Anthony was convicted of an adult felony, and that means that it carries all of the consequences that go along with that. So relief in this case would be meaningful if the court were to decide that transfer should not occur. And that is something also that the court would take into account when they're determining whether he should be transferred, whether Anthony is the type of juvenile who should be in adult court or whether he can benefit from continuing services, or additionally whether he's the type of juvenile that wouldn't even want an adult court in this instance, specifically given the substance and circumstances of this crime. So I think that that's something that the court could take into consideration on remand. I'm sure Your Honors are fully aware of what the retroactivity test is in this case, but I'll give you an overview so we can start there. The amendments to the automatic transfer law are retroactive for two reasons that we have argued. First, that the legislative intent is clear from its purposeful omission, and second, that the amendments are procedural. To determine whether an amendment applies retroactively, Illinois courts first look to whether the statute clearly states its intended temporal reach. Second, if the statute does not clearly indicate its intended temporal reach, Illinois courts apply Section 4 of the Statute on Statutes or the General Savings Clause. And if the amendments are procedural, they apply under Section 4. If they're substantive, they do not. So in short, if the legislature's intent is unclear, this court's inquiry is whether the statute is procedural or substantive. Isn't Paragraph 11 in the statute, why can't we look to that as our temporal reach? Where it says if he's arrested after January 1, 2014, it applies, and even though the effective date of this act is January 1, 2016. Why can't Paragraph 11 be the temporal clause in this? Well, I believe that paragraph is referring to a different amendment to the bill. Okay. And not to this specific amendment. There's actually no... So they would have to say, the legislator would have to say, every time they amend the bill, they would have to give for each paragraph, this applies on this and this date. Absolutely. And they have done that in other sections of this very bill. For example, in the amendments to Section 5-805, they included a savings clause that was explicit. So from that, we can understand that this omission is meaningful. The legislature knows... But who does Paragraph 11 apply to, then, if it doesn't apply to the entire statute? Well, it applies to that specific amendment. I'm sorry. Let me pull it out. Yeah. It's attached to your supplemental brief. I don't know if that's... To the... To 5-130. So I'm talking about the addendum to your supplemental brief. Paragraph 11, the changes made to this section by 98-61 apply to amendment. I think, Your Honor, I can address that simply, which is that Public Act 98-61... I think Judge Allison, I don't know how to... Oh, gotcha. You're telling me that that's pressed on as enrollment. Well, then I'll be quiet. But I will say that that Act 98-61 is different from this Act 99-258. And so what we can take from that is that there is no explicit delayed implementation clause. There's no explicit delayed effective date in this Act. And a lot of courts have said that there is a delayed implementation clause. It will be express and unambiguous. We don't have that here, as the State has argued. So we can draw from that that this omission was purposeful, especially since the State Legislature is fully aware that Section 4 applies as the default if they do not include an express clause. So is there no... If we say, yes, it's retroactive, is there no restriction on that then? Is it anybody who was tried and sentenced under automatic transfer provisions? It's anyone who has a case pending on direct appeal, Your Honor. And that's, we would argue, is a small world of cases and certainly not a huge burden given the attention that courts in Illinois are giving to juveniles and their special characteristics. In addition, Your Honor, as I mentioned, in a separate part of the Act, in Section 5-805, there was an express savings clause that was applied. Also in this very statute, as we just discussed, there is a savings clause from a prior bill. And when the Legislature passed Section 5-120 in 2013, which raised the jurisdictional age from 17 to 18, it included an express savings clause that the Act did not apply to offenses that occurred after the effective date. Here we have none of that. We have no express language. So we can take from that the presumption that the Illinois Legislature intended that this law would be applied retroactively. Secondly, even if the legislative intent is unclear, the Illinois Supreme Court has stated that if a new law is procedural, it should be applied retroactively under Section 4 of the Statute on Statutes. And here the Illinois Supreme Court itself has said in Patterson that whether a defendant is tried in juvenile or criminal court is a matter of procedure. As I mentioned, there are two different decisions that have applied this principle, Patterson or Patterson 2, as we can call it, and also Ortiz. In Patterson 2, Justice Neville, writing for the Second Division, stated that because the Legislature did not include any express statement concerning retroactivity, Section 4 controls. And under Section 4, procedural amendments are applied retroactively. Secondly, in Ortiz, which adopted the reasoning of Patterson and relied on the Illinois Supreme Court's statement in Kavni that the Legislature will always have stated the temporeach of an amendment, it held that the Court, in that case, held that the amendment to the Automatic Transfer Statute was retroactive to cases pending on direct appeal. Your Honor, in this case, as I said, relief is meaningful because it could result in the removal of Anthony Scott's only adult criminal conviction. Now, the State has put forth two arguments that the Legislature intended prospective application, because first, the statute included a delayed implementation clause, and second, the State argues that Patterson was wrongly decided because procedural amendments may only be applied retroactively if there is no retroactive impact. First, I'll address the delayed implementation clause argument. Public Act 98258 does not expressly state its effective date, so the default effective date is the effective date of laws act. Therefore, Section 4 governs this exact situation. It controls when the Legislature is silent about retroactivity. If the default date always equaled delayed implementation, this would render Section 4 unnecessary, and where a great number of laws become effective on the default date, that would be incongruous. Secondly, on the retroactive impact point, the Illinois Supreme Court has found that the Legislature has indicated the temporal reach of every statute in Section 4, so the second step that the State is proposing is no longer a part of Illinois law. The State is ignoring the Illinois Supreme Court's clear pronouncements that if the intent is unclear, Section 4 is the expression of a Legislature's intent. What do you make of this case that came out in 2015 from the Supreme Court, the J.T. Einoder case? Yes, Your Honor. Do you know about that case? I am familiar with that case. Okay. I believe they may have characterized the statute on statute section a little differently in that case. They did, and they did apply the retroactive impact test analysis, but in that case, the change was a substantive change. It wasn't a procedural change, so they never had to move to Step 2 of the analysis, which was addressed in Kaveny. In addition, the other opinion, I believe, that was cited by… But they referred to it as a presumption, right? A presumption of prospective application. Absolutely. There is a presumption of prospective application. What Illinois Supreme Court has done, what the Legislature has done, is enacted a scheme under Section 4 where the presumption is the default if there is no express inclusion or statement about retroactivity in the statute. So Section 4 is the expression of the Legislature's intent. And Kaveny has said that as also… I'm sorry. I'm sorry. I may have just heard you wrong. I believe in that case they referred to it as a presumption of prospective applicability. I think your argument is that Section 4 of the Statute on Statutes is a presumption of retroactive. It's not a presumption of retroactivity. It's a presumption that the Legislature's intent is that it be retroactive if there is no express statement. And that's what Kaveny held. So it got rid of the second part of the analysis. Yeah, Kaveny did, but I'm asking about the 2015 case. Oh, about the 2015 case. Yeah. Right. So I believe there is a presumption of prospectivity generally as a principle. Under Section 4 of the Statute on Statutes? Not under Section 4. Section 4 has changed the presumption. So the presumption now in Illinois is if there is no express statement, then the default rule, Section 4, applies. And if the amendment is procedural, then it can be applied retroactively. So that has become the default rule. Generally speaking, when Kaveny adopted the landscrap analysis, the general rule was prospectivity. But since then, the Illinois Supreme Court has interpreted Section 4 much more generally to be the default rule. Which makes me question why last year they referred to it as a presumption of prospective applicability. That's what I don't understand. Well, it is a presumption of prospectivity, generally speaking. And the legislature What does that mean? What that means is that we have an interest in finality of judgments. We have an interest in not disturbing transactions that have ended in some way. However, the legislature has enacted its own scheme that it has determined that if it includes an express statement, then it can be an express statement that's retroactive, an express statement that is not. Then you have to follow the intent of the legislature always. However, this legislature has also enacted Section 4 as part of that scheme. So they know when they're enacting a bill that any time they don't include an express statement, it will be applied retroactively. So in that sense, we are getting a prospective presumption. However, the Illinois legislature has enacted Section 4. I will just talk a little bit more about the state's arguments related to Hunter. So Hunter is a contrary decision, as this Court knows, that followed the approach in Landgraf and held that retroactivity of procedural amendments is discretionary and depends on whether there's a retroactive impact. As I just mentioned, Hunter directly contravenes Illinois Supreme Court precedent and should not be followed. In fact, misstates Illinois law. Hunter's assertion that prospectivity is the default is for substantive amendments. It is not the same for procedural amendments, as the Illinois Supreme Court is staging cabinet and this has recently been reaffirmed in the cases of Allegius in 2006 and Doe in 2009. So in fact, in Atkins, the Illinois Supreme Court acknowledged that the retroactive impact step no longer exists in Illinois law. The counsel, Section 4, the statute on statutes, talks about retroactive applications so far as practicable. As best as I can read this, this is not a very easy statute to read, the statute on statutes, but that was the language that Hunter seized on, right? Yes. They said, look, we've already had a trial. This person's already gone through a whole process and now if we're going to give this a retroactive application, we're going to have to just upset everything that already happened. That's not practicable. Isn't that basically what the analysis they went through? That is the analysis. They're importing a retroactivity impact analysis using the as far as practicable portion of the statute, yes, Your Honor. And if we look to the opinion in GLSEN, the Illinois Supreme Court, it is basically the analysis is whether a statute is practical to be applied retroactively depends on whether it's procedural or whether it's substantive. So that question has already been decided and read into the statute. Looking back before that interpretation is what Hunter is doing and relying on the second part of the Landsgraf analysis, which the Illinois Supreme Court has done away with. Your Honors, in conclusion, this case is straightforward. Two recent published opinions have found the amendments to the Juvenile Automatic Transfer Law retroactive and Anthony urges this Court to adopt the reasoned analysis in Patterson and Ortiz and remand his case for a discretionary transfer hearing. In addition, Anthony stands on the remaining arguments in his opening and supplemental briefing and for the reasons stated requests that this Court grant him relief. Are there no other questions, Your Honor? Thank you. Thank you very much. We'll give you some time for questions. Mr. Spalberg. Good morning again, Your Honor.  I'm going to start off with one point of agreement with opposing counsel that the issues in this case are very straightforward and that's where the agreement actually ends. Because contrary to what counsel stated, the Illinois law is very clear that there is a presumption against retroactivity. It is the presumption which is found in Landgraf. It is a presumption which was adopted by the Illinois Supreme Court explicitly in the ComEd case, in the Kaveny case, in the J.T. Inouye case, the Hiroshi case. Every case that we've cited recognizes there is a presumption against retroactivity of legislative amendments. And the reason for that is very simple, because the legislature tries to create new proceedings, new laws, new aspects for people to abide by, and they don't expect people to go backwards and undo them unless there is a good reason to do so, primarily if it's constitutionally mandated. And so, yes, there is a distinction between substantive and procedural amendments within our law, and the law is very clear, substantive amendments are not retroactively applicable unless the Constitution demands it. Procedural amendments, however, may be retroactively applicable in various ways, but primarily is found under Section 4 for save only the proceedings thereafter shall conform so far as practical to the laws enforced at the time of such proceeding, meaning we allow under our law, a very well-established law, new statutes which create new procedural mechanisms to be applied to pending cases to those aspects of the cases which have not yet occurred. For that reason that we didn't allow, the courts didn't say when the Supreme Court rules were amended regarding jury instructions to go backwards, or Rule 431 in particular, to go backwards and say the admonishments that was given to the voir dire two years before the amendments, while they were valid at the time, we know they're not going to be consistent with the current Rule 431, but we're not going to hold it back, we're not going to go backwards, because those are proceedings that occurred prior to the amendment. But the rules of retroactivity deal with proceedings thereafter. And that's the key to why the Hunter decision was correct, and why the Patterson and the Ortiz cases are wrong, because they fail to recognize the significant distinction between the end of the trial, the final judgment, which is now on appeal. There's a different question I recognize as to whether or not the statute applies to pending trials. That's a matter that's currently before the Illinois Supreme Court in a mandamus action that was argued in September. But as for purposes of final judgments on appeal, there is no question that Section 4 of the statute on statutes would not deem this retroactively applicable. As I said, the law is clear. Procedural amendments are only, may be applied retroactively, so far as the proceedings, therefore, is practicable. Well, is that what the case law says? I mean, the argument of the defense is pretty straightforward. They're saying, well, actually, let me start with that, Mr. Spelberg. Do you acknowledge that this change to the adult transfer law, the automatic transfer law, is procedural? Absolutely, Your Honor. We had never said otherwise. Okay. It is solely procedural. Okay. I think you said otherwise in Patterson. No, we actually did not. You didn't? No. Okay. It was characterized, yes. Okay. Good enough. So it is procedural. The only question is, what do we do with a procedural amendment? And haven't these cases that they've cited, Doe v. Dallas, Atkins, Kavanagh, I'm just talking about Supreme Court cases now, not the three cases that were, you know, haven't they all said, look, if it's procedural, and the legislature doesn't specifically say what the temporal reach of the statute is, it's easy. Section 4 of the statute on statutes says it's retroactive. Isn't that the beginning and the end of it? Your Honor, I actually don't think that's an accurate statement on what those cases say, because what they say is they may be, because they're procedural, they may be applied retroactively, meaning you have to look at the retroactive impact, or you have to look at it as defined by Section 4 to be so far as practicable, to conform to the laws at the time of the proceeding. Retroactive impact analysis has never been eliminated from our analysis of retroactive application of statutes. It is part of the Landgraf test, which was specifically adopted. It is incorporated into Section 4 in, admittedly, very arcane language, but it is there. We have always applied retroactive impact tests, because we haven't said there's a new rule of evidence. We're going to go backwards and say it applies, even though it didn't apply in the first place. And it all fits within. But haven't the, hasn't the Supreme Court more than once said that you never have to go past the first step of the Landgraf test? Your Honor, they have said that a couple times, yes. Aren't they saying that you don't need to look at the retroactive impact? Admittedly, I think the case law is a little bit confused on this, because we know that J.T.I. Notar refers to retroactive impact, so does the Hiroshi case. I mean, so there's been recent discussion. Yeah, but J.T.I. Notar was a case where they found it to be a substantive. Right. So arguably, that was dictum. But in the Doe versus Dallas, or I guess it's Diocese of Dallas, People versus Adkins, Kavanagh, I think all three of those cases said you never go past the first step of Landgraf. Why would they say never? Well, because I think what they're saying, Your Honor, is under the Landgraf test, the first question is, is there a clear and express statement of temporal reach by the legislature? If there is not, under our laws, we go to Section 4. Right. So we don't have to apply the Landgraf test directly. Instead, we're going to apply Section 4. And Section 4 says if it is a substantive amendment, it never applies retroactively. If it is a procedural amendment, it can apply retroactively to those proceedings thereafter so far. If it's practicable to do so. If it's practicable to do so. So when they're saying we don't apply the second step of Landgraf, maybe we're not going to apply the common law second step, because Section 4 tells us how to apply it. But I would say, Your Honor, and I know counsel tried to distinguish this, in this case the temporal reach was very clearly stated by the legislature. When they chose to defer and delay the implementation of the changes to Section 5130, in this case, is counsel stated the effective date of this statute was January 1, 2016. The legislature passed it in the summer of 2000, in May of 2015. The governor signed it in early August of 2015. And so. By operation of law, if the legislature passes a law before, what, June 30th, without an effective date, the effective date is the next January 1st. That's in the Constitution, I think, and it's in the state law, too. There is a reference in the state constitution to allowing the legislature to create the effective date of laws, which they have. Yeah, which they have. But the legislature. It's a delayed effective date. Silence is a delayed effective date. Yes, Your Honor, I believe it is in this case. And the reason why is because the legislature is fully aware as to when legislation is going to become effective. They have the power to make it effective immediately. They have the power to make it effective on a date certain. Or they have the power to default to the standard rule. And that is a conscious choice among the legislature, is to decide how to do it. And what the OMS report has told us in terms of defining temporal reach is you look to see for whether or not within consistence of the presumption against retroactivity, if it is a delayed effective date, if the legislature has chosen to delay the effective date, that is proof which is consistent with the presumption against retroactivity. It doesn't negate or rebut the presumption. Here the legislature was well aware that it was going to be delayed in its effectiveness. That is no different than if they had put a specific date certain of the effective date, because the legislature can act by default, as they chose here too. It's important, had they chosen an immediate effective date, which they have the clear capability of doing so and have done many times, then the argument would be by choosing it to be an immediate effective date, they have expressed the temporal reach that this should apply to any and all cases. And that's what the Hiroshi case talks about. That's what the Brown case talked about, that the choice of an immediate effective date is a demonstration of temporal reach. So when we talk about temporal reach, are we talking about the effective date of the law or the retroactivity of the law? Both, Your Honor. Right. But those are different things. The legislature could have an immediate effective date on a bill and it could still have only prospective application. Yes, it can. But one of the factors, if it is an immediate effective date, that is a factor that you can consider as to whether or not the presumption against retroactivity has been rebutted. And that's the key here is that you have to begin with the presumption against retroactivity. That has been consistently identified. There is no presumption of retroactivity as counsel has stated. There is a presumption against it. And you have to look through all the things of how you can overcome it. One of which is, has there been a clear expression of temporal reach, which can be identified either by an express statement of, we intend this to apply to all cases currently pending. One way it can be drawn from is if there is a decision that applies immediately and an effective date. That's one way that could be addressed. Other ways could be if there is some sort of indication that they intended it within the particular statute itself. And that's what the Hunter case recognized and that's what the J.T.I. Noether case recognized, is that you cannot look to other amendments, even in the same public act, to decide whether or not there was an expression of temporal reach. That's what Justice Brook was referring to, the language that's already in? Yes. Well, I guess I believe Justice Brook was referring to the language from Public Act 9861, which was the change in age from 17 to 18 for juvenile court. What I was referring to, though, is what counsel was arguing, is that the other provisions which were amended in Section 98258 had their own independent saving costs. There's at least two sections of the public act where they specify an effective date. Right. But what Hunter recognized correctly, based on the errors, is that you cannot look to the other statutes, even within the same public act. You have to only look at the statute which you are discussing. The statute which we're talking about here is Section 5130. Doesn't that help you, though? Don't you want to talk about those things as proof that they didn't mean to do that with 5130? Well, Your Honor, I think it could go both ways. I think it could go both ways. As counsel has argued, because the legislature purposely chose not to include it in Section 5130, then they must have intended this to be retroactively applicable. Your Honor, you're right. It could be viewed the other way. They felt they didn't need to do it because there wasn't there. Well, they knew how to do it elsewhere when they wanted to in the public act and chose not to do it with the changes to 5130. Right. But, again, all this factors into the presumption against retroactivity, is that all these questions of legislative intent, of temporal reach, what the Illinois Supreme Court has said is there has to be a clear expression of retroactivity to overcome the presumption against it. And there's nothing here that they can't do. You think there's a general presumption in Illinois law against retroactivity of any statute's reach? Yes, Your Honor. I mean, I know when you're talking about things like vested rights and things like that, we talk about that. But just generally, any law? I believe that's what the case law says, and that's consistent with what Section 4 says. Because Section 4 says, again. But is there a presumption against the retroactive application of a procedural law? Yes. There's a presumption? Yes. Of retroactivity? Yes. I mean, a presumption against retroactivity. There is a presumption against retroactivity of all laws. All laws, even procedural laws? Right. And then the presumption cannot be rebutted for substantive amendments at all unless it is constitutionally mandated. And then for procedural ones, it can only be rebutted by either a clear expression of legislative intent or within Section 4, no retroactive impact. Because otherwise, if there is a retroactive impact, and retroactive impact has been defined by the Supreme Court as imposing new duties on the parties, changing the manners in which it occurred. That is what the retroactive impact is here. Because what counsel is asking for is a discretionary transfer hearing, which has never been required before, was not required in any way under the proceedings and procedures and statutes that were in effect at the time of the crime and of the trial. And so what counsel is now saying is, the legislature has created a new mechanism. I want to utilize that, even though it doesn't seem to apply, even though it would not have been even in existence at the time of the proceedings itself. Counsel, I'd like to ask you a policy question. Sure. Why are you choosing to fight this? Why are you choosing to fight the retroactive application of it? I mean, I'm not saying you're not within your rights to do so. You're a prosecuting office. But you could also not fight this. From a policy standpoint, what is wrong if the legislation has now said armed robbery should not be an automatic transfer? What's wrong with taking the very probably few cases that are on appeal at this point and just letting them go back and do this? Well, Your Honor, I mean, there is a fair amount of consistency that we have to maintain among the law, not just within criminal law, but within all of our law. Because the laws of retroactivity are not separated out criminal versus civil. We have to have a uniform understanding as to how we apply them. Because it's not just simply today with this defendant, Anthony Scott, it's tomorrow with another defendant as to how we're going to assess that. And if we don't have a consistent approach as to what the law of retroactivity is, then we don't really have a consistent approach as to how we assess facts and cases themselves. Clearly, if the legislature had made a determination that this was going to be an express determination that this should be retroactive, that would be a very different scenario. But what we don't have here is a clear statement. And getting to that point you just made, Your Honor, which is the point I want to make, counsel said that this should only apply to those cases on direct appeal. What I think she is saying is that she is incorporating the constitutional Teague retroactivity doctrine, which we say new rules of constitutional procedure are applied to any and all cases on direct appeal. But that has never been the rule for statutory retroactivity. Statutory retroactivity is a different test for a different reason. And that rule is found in Section 4. Because, again, it's saying only the proceedings thereafter shall conform as practical. Does that mean people are going to be coming out of the woodwork? If we find this to be retroactive, does that mean someone in Mr. Scott's situation, but whose case has been resolved on direct appeal already is going to be filing a post-conviction? I think it's possible they could. I'm not saying that they would get relief, but it's certainly possible they could. What I'm saying, however, is that if there is any cutoff to the retroactivity of a procedural amendment, it has to be at the time the proceeding has occurred. In this instance, I believe Section 5130, the relevant proceedings are not at the trial or even at the sentencing. They're at the charging. Because under Section 5130, it's a determination as to where the charge should be levied, whether it should be by indictment or information in the criminal courts or it should be by petition for adjudication of worship in the juvenile courts. Well, let's get back to the policy here. It was decided at the beginning he'd go to criminal court, but he wasn't sentenced under adult criminal law until your office filed a petition. Now, you represent the people of the state of Illinois, and you're going to act for the best of the people of the state of Illinois. In this case, this minor is going to spend the same amount of time in, whether he's in the juvenile or the adult system, but five years or whatever time from now, he's going to come out. The way it's coming out now, he's going to come out with a felony conviction, never be able to get a job. He's going to be a career criminal. If he goes into the juvenile system, there's a possibility of rehabilitation. I tell people one of the first cases I had coming out of law school, a young man did something far worse than this. He shot a young mother kid in the back of the head. He was being bullied, but he committed a murder. This was in 1978. That young man, fortunately, was sent to the juvenile system. He went through the rehab. He became a school teacher, spent a wonderful career in school, teaching other kids not to get in trouble, and I think he recently retired. In this case, this kid had possession, and somehow your office made the decision that this kid is hopeless, apparently, and without submitting any other evidence at this 5-1-30 hearing, committed to a lifetime criminal. If this kid goes through that, he's going to come out at 21 years old at their oldest with a felony record, and we're going to be hearing cases from this kid from now on. Why did you petition this particular individual? Does your office petition on every single case that we're identifying? Thank you, Your Honor, and if I can clarify, there was no petition that was filed in this case at the outset because this defendant— How did it affect the conviction? If I can explain the process. So obviously, at the time of charging, because the evidence indicated at the time of charging that this was an armed robbery committed while armed with a firearm, under the statute, the offense was excluded from the juvenile court jurisdiction. It could only be charged within the adult court because he was 16 years old at the time. He went to trial. The trial judge found him not guilty of the charged offense and found him guilty of the lesser-included offense of aggravated robbery. At that point, Your Honor, we did believe that the evidence was sufficient for an armed robbery with a firearm, but the judge found otherwise. We filed a petition pursuant to the statute to ask to have him sentenced pursuant to the adult proceedings. The whole hearing was held, and the judge ruled that, based upon the balancing of factors— I know, but this is a radical fantasy. Why did you do that? Why did you do that? Your Honor, I believe at the time, and I wasn't there— I know. Generally, we believe that the evidence was sufficient to support the greater charge, and so the proper sentencing— But even if he was guilty of it, wouldn't he be better off— Your Honor, those are policy decisions that I just — I can't answer as terms of how the individual decisions are made. Would you still have to petition, or it's only because he didn't go there, the armed robbery he's acquitted of, so then you have to petition? That's an open question right now, Your Honor. There's a case called People v. King from 2011, which held that if you are found guilty of a lesser-included offense, of the charged offense, the additional petition is not necessary. Okay. However, and cases since then have held that here within the appellate court. There's a case pending currently in the Illinois Supreme Court, and forgive me, I can't remember the name. It was argued in September, though, which said that is too broad of a reading of the King decision. King only applied and said there was not the additional petition necessary because it was a guilty plea and the charge was still pending. The argument that's offered by the defense in that case is if you've been acquitted of the greater charge, you no longer have the automatic transfer charge pending against you, so in order to be sentenced as an adult, you have to file this. So that's why we filed the, it's the legal reason for why we did it. In terms of the policy, Your Honor, I can't answer that. I don't know that. Those are decisions that are made by the state's attorney as to how to proceed with cases. Individual choices are made. But in terms of the particular policy decisions in this case, I just can't answer. Do you think, counsel, that the hearing that was held to determine whether to sentence the defendant as an adult was tantamount to the discretionary transfer hearing that she's seeking as relief? Well, Your Honor, yes. I think that, as you pointed out, the factors are very similar as to what should be considered, and I think it is very important to note that counsel has never challenged that finding as being inappropriate or inaccurate or an abuse of discretion in any way. She said it was insufficient, though. She said it was insufficient now to compare to what she's saying is a discretionary transfer, but importantly, even before the changes in the statutes regarding the amendments and the now assertion that there should be discretionary transfer, there was never an argument that it was an improper decision by the judge below. Nothing at all was raised in this case. So the finding there was not an abuse of discretion at the time. Was there any discussion at that hearing about the services that a juvenile facility could provide the defendant compared to a juvenile facility? Unfortunately, I have not seen the record myself, so I can't answer that. I imagine that there would be. I know that's a factor to be considered, but I can't specifically answer that. I don't think so. But in terms of one other point about the 5805 discretionary transfer hearing that counsel is asking for, in relation to the retroactivity argument that she is making, it's not clear what version of 5805 would apply, because the version that was included in the public act that amended Section 5130 was also amended to Section 5805, and that provision specifically says it shall only apply to those offenses that occur on or after the effective date of January 1, 2016. That's why we entrust so much to our trial courts. So it sounds, though, that counsel is asking for the opportunity to have a discretionary transfer hearing based upon the version of the Discretionary Transfer Act that doesn't apply anymore, that is not in effect anymore, and can't apply. And so the problem, however, is that at the time of that statute, a defendant who was initially charged with armed robbery with a firearm does not fall within the scope of the Discretionary Transfer Act under 5805. And so on remand, it would be very unclear what provision, which version of it would apply. I know I've taken a lot of time. If there's any further questions, otherwise, we would ask this Court to please affirm the ruling and to rule that the amendments to Section 5130 are not retroactively applicable as Hunter. Thank you. Mr. Spilberg. Thank you, Your Honors. Just a few points on rebuttal. I'll address Mr. Spilberg's last point, which was that we're asking for the new section of 5-805 to apply. We have never asked for that relief in this case, Your Honor. It is not asked in our brief. And, in fact, we've discussed in our brief that it is likely that the old version, the 2013 version of Section 5-805 would apply. And those factors that I discussed earlier, the differences are still in place in that version of the statute. So, counsel, here's what I don't understand about your argument. There are several places in this public act. It has three sections, right, 5, 10, and 15. Ten is just a repealer. But in both Section 5, the amendment to Section 5-822, and the amendment to Section 5-805, and in Section 15, the addition of that new provision, all of those talk about a specific effective date. Yes. And then they don't say anything in 5-130. Yes. They're silent. But in their silence, of course, they're allowing it to be January 1. So the fact that in some of these, they specified it, and they weren't necessarily just saying on the effective date. One says no later than two months after the effective date. Doesn't that lead us to believe that maybe they were shooting for a January 1? And if they were shooting for a January 1 date, doesn't that sort of undercut the idea that they intended it to apply retroactively? I think those are two different arguments. So there are two different sections of the statute, and we have to read them together. We can't read out, for example, Section 4 of the statute on statutes because there's also a section on the effective laws. So in this case, the legislature knows that the default effective date is in place when it doesn't include an explicit effective date. It also knows that Section 4 applies when it doesn't include an express statement of retroactivity. So if we want to read Section 4 out of the legislation, then that was what we would have to do if we were to take the State's argument that delayed implementation clause can be found by just having a default effective date. There's a couple other points that counsel made. Counsel argued that it's an open question whether cases that are not pending on direct appeal would benefit from retroactivity. The Court does not need to decide that question today. A final judgment has not issued in this case and is the clearest case for retroactivity. In fact, Patterson has said because the case was pending on direct appeal in that case, which relied on the case of Grissom to hold, that retroactivity applies to cases pending on direct appeal. We don't need to discuss a larger question this morning. In addition, Your Honors, even if retroactive impact is the analysis, and we don't conceive that it is for all of the reasons that the Illinois Supreme Court has stated and that I have articulated this morning. Well, but let me press you on that for a second. So Mr. Spellberg says that when these cases are all coming out, saying, you only have to do step one of Landsgraf, you don't have to get to step two. They're not saying because step two means it's always going to be retroactive if it's procedural, but rather step two just means let the statute on statutes take care of it. And within the statute of statutes, it has a practicability requirement, which is I think what Hunter seized on. So what do you make of that? Which way did the Supreme Court mean to go with that language? Well, the Supreme Court has clearly stated, as Mr. Spellberg said, that the correct presumption is that prospectivity is the default for substantive amendments. But it's not the same for procedural amendments, and that's because they have said explicitly that a second part of the Landsgraf test does not apply in Illinois, so there's never retroactive impact. And the statute says that it shall apply so far as practicable. That means that procedural laws are retroactive because we have Section 4 and because the Illinois Supreme Court has made that explicit pronouncement. In fact, Cabney has said it is virtually inconceivable that an Illinois court will ever go beyond the Landsgraf approach, the second part of the Landsgraf, go beyond the first part of the Landsgraf. Is your interpretation reading out the practicability requirement of Section 4? It's not reading that out. It's actually just looking to the interpretation of that section by the Illinois Supreme Court in numerous opinions that this Court has pointed out. So you think the Supreme Court would set up procedural amendments, retroactive application is never impracticable. That must mean what you're saying. Right. That means that legislature has determined that procedural amendments to cases pending on direct appeal are practicable to implement. Substantive amendments are not. And if we agree with you and find that this is retroactive, what happens to somebody who's in prison right now in the same exact situation as your client but whose direct appeals are exhausted? That is something that I think is a question that is still open. And in this case, we're only addressing a case where there's no final judgment. And I think that's the decision that this Court can lend itself to as cases pending on direct appeal. Finally, as I mentioned, even if retroactive impact is the test and the analysis, the State has offered no specifics on the supposed burden on the State by retroactivity. So the legislature has set out to impose new duties on the State with regard to juveniles. And Patterson, in the most recent opinion that just came out, modified it, stated that this would be no great burden on the State in view of the interest of all citizens in the imposition on juveniles of just sentences that take into account the distinct attributes of youth. For those reasons, Your Honor, we ask that you grant Anthony Scott relief in this case. Thank you. Thank you, counsel. Thank you, Ms. Price. Thank you, Mr. Stolberg. It was very well-argued and brief. We will take it under advisement and stand adjourned.